The document below is hereby signed.

Signed: November 16, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

```
              UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
STEPHEN THOMAS YELVERTON,      )    Case No. 09-00414
                               )    (Chapter 11)
            Debtor.            )
_____)
                               )
LUDWIG & ROBINSON, PLLC,       )
                               )
            Plaintiff,         )
                               )
       v.                      )    Adversary Proceeding No.
                               )    09-10023
STEPHEN THOMAS YELVERTON,      )
                               )    Not for Publication in
            Defendant.         )    West's Bankruptcy Reporter
```

MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS COMPLAINT

This addresses the defendant's motion to dismiss the complaint under Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth below, I will deny the motion.

I

On May 14, 2009, the debtor, Stephen Thomas Yelverton, commenced in this court his case under chapter 11 of the Bankruptcy Code (11 U.S.C.). Thereafter, the plaintiff

instituted the above-captioned adversary proceeding seeking to have the court declare its claim non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code.  The facts as alleged in the plaintiff's complaint are as follows.

On or about March 9, 2007, the debtor's law firm, Yelverton Law Firm (YLF), and the plaintiff, Ludwig & Robinson, PLLC (L&R), entered into a sub-sublease agreement.  Under the terms of that agreement, the sub-sublease was to expire September 30, 2008.  The master lease underlying the sub-sublease, however, was set to expire on February 28, 2008, seven months before the sub-sublease was set to expire.  From April 2008 through the end of the sub-sublease, YLF failed to make payments as due.  Also included in the sub-sublease was an agreement by L&R to provide office services to YLF.  YLF did not make payments for these services from April 2008 through the end of the sub-sublease.

YLF and L&R also entered into a second agreement to provide health insurance to Yelverton's wife under L&R's group medical insurance policy.  YLF failed to make payments due under that policy from March 2008 through September 2008.

After YLF first failed to make payments under the lease and health insurance policy, Yelverton made a series of representations to L&R regarding YLF's and Yelverton's purported ability and intent to pay the amounts due.  Based upon these representations, L&R held off terminating the lease and medical

coverage and continued to provide YLF and Yelverton with access to the leased office space, with office services, and with medical coverage. In its complaint, L&R alleges that when Yelverton made these representations to L&R he, in fact, had no intention of paying. In support of this, L&R points to Yelverton's withdrawal of significant personal and YLF funds for the personal use of his wife.

II

The purpose of a Rule 12(b)(6) motion to dismiss is "to test the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). In deciding a motion to dismiss, although the court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff . . . ," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002), the complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint . . . . [nor must it] accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). In

3

deciding a motion to dismiss, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

### III

In his motion to dismiss, Yelverton sets out two general bases for dismissal: the invalidity of L&R's claim and L&R's failure to state a claim under § 523(a)(2)(A).  I will address each in turn.

#### A.

Yelverton's first basis for dismissal centers on whether the claims stemming from the YFL sub-sublease are enforceable against him.  In this regard, Yelverton makes two alternative arguments.  First, Yelverton states that dismissal of the complaint is proper because L&R failed to either allege or demonstrate that he was personally liable on the sub-sublease.  Alternatively, Yelverton argues that even if he is personally liable, there is no liability for failure to pay the sub-sublease because the master lease underlying the sub-sublease expired prior to the period in which L&R claims damages.

Yelverton's first basis for dismissal is without merit. Under D.C. law, an individual who causes harm to another by

engaging in fraud can be held liable for the harm arising from that fraud, here, a sub-sublease of property to YLF for which rent was not paid. Section 523(a)(2)(A) excludes from discharge a debt for property obtained by fraud. Historically, there were three views as to whether the debtor must personally receive the property in order for the debt to be excepted from discharge:

> The first view . . . requires that the debtor personally receive the fruits of the fraud. The second view . . . is termed the "receipt of benefits" theory. This theory requires that the debtor gain a *benefit* from the [property] that was obtained by fraudulent means. A third view, which is the broadest, requires simply that a debtor obtain [property] by fraudulent means such that a debtor does not necessarily have to receive [property] personally or receive any benefit at all.

*HSSM #7 Limited P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 890 (11th Cir. 1996). Most courts to confront the issue agreed that an indirect benefit to the debtor was sufficient. *See, e.g., Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir. 1996); *HSSM #7 Limited P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886 (11th Cir 1996); *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 604 (9th Cir. 1990). In 1998, however, the Supreme Court provided a more expansive view of § 523(a)(2)(A) and arguably did away with the indirect benefits theory.

In *Cohen v. de la Cruz*, 523 U.S. 213 (1998), the Supreme Court addressed the issue of whether treble damages awarded in a state court fraud action were non-dischargeable under

§ 523(a)(2)(A) or whether the exception only encompassed the money or property the debtor actually obtained through the fraud. *Id.* at 215. The *Cohen* Court held that "§ 523(a)(2)(A) prevents the discharge of *all* liability from fraud, and that an award of treble damages therefore falls within the scope of the exception." *Id*. (emphasis added). Important to the Court's reasoning was that the phrase "to the extent obtained by" did not relate to benefit, but instead meant causation:

> Moreover, the phrase "to the extent obtained by" in § 523(a)(2)(A) . . . does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or . . . credit"—not "any debt"—so that the exception encompasses "any debt . . . for money, property, services, or . . . credit, to the extent [that the money, property, services, or . . . credit is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

*Id.* at 218-19; *see also Nat'l Dev. Servs., Inc. v. Denbleyker*, 251 B.R. 891, 896 (Bankr. D. Colo. 2000). At least three circuit courts to address the issue post-*Cohen* have abandoned the direct/indirect benefit framework and found that as long as someone or something received property on account of the debtor's fraud, the claim arising from that fraud was non-dischargeable. *See Muegler v. Bennings*, 413 F.3d 980, 983-84 (9th Cir. 2005); *Deodati v. M.M. Winkler & Assoc.*, 239 F.3d 746, 749 (5th Cir.

2001); *Pleasants v. Kendrick*, 219 F.3d 372, 375 (4th Cir. 2000). Regardless of which view prevails, L&R has stated a claim notwithstanding that Yelverton is not a signatory to the sub-sublease.

First, L&R has alleged that Yelverton indirectly benefitted from the sub-sublease from L&R to YLF. In its complaint, L&R states that Yelverton is the founder and principal officer in YLF, and that Yelverton and his wife used the office space provided by L&R. In situations analogous to this, other courts have found an indirect benefit to a debtor when financing was extended to a corporation that the debtor controlled. *See Church*, 903 F.2d at 604; *Simmons v. Wade (In re Wade)*, 43 B.R. 976, 981-82 (Bankr. D. Colo. 1984). Such is the case here. Yelverton is the founder and principal officer of YLF. L&R has alleged that both he and his wife used the office space. This is enough of an indirect benefit to fall within the purview of the indirect benefit view of § 523(a)(2)(A). Moreover, under *Cohen*'s reasoning, it does not matter whether Yelverton received any benefit at all. All that matters is that some property was obtained because of his misrepresentations. In their complaint, L&R has sufficiently alleged that they opted to forbear evicting YLF based on Yelverton's alleged misrepresentations, thereby giving YLF the benefit of using the leased premises for a longer period.

7

Yelverton's second basis for dismissal—that even if he is personally liable, there is no liability for failure to pay the sub-sublease because the master lease underlying the sub-sublease expired prior to the period in which L&R claims damages—is also without merit.  Under D.C. Code § 42-3229, if a lease is surrendered to be renewed, any sublease of that lease remains enforceable as if it had been renewed at the time the master lease was renewed.  L&R's complaint does not explicitly state that L&R renewed its lease with the master landlord.  But if such renewal was required for L&R to comply with its agreement with YLF, the complaint implicitly alleges there was such a renewal, as its paragraph 9 alleges that "L&R provided YLF with the demised premises *under the terms of the Agreement*" (emphasis added).[1]

B.

Yelverton's next basis for dismissal is that L&R has failed to state a claim under § 523(a)(2)(A) in its complaint.

---

[1] Moreover, L&R could continue to sub-sublease the premises even if L&R did not renew its lease with the master landlord.  If L&R had not renewed the lease, then it would have been a tenant at sufferance under the master lease, subject to the master landlord's right to immediate possession under District law.  *See* D.C. Code § 42-3201.  But there is no right of self-help to evict a tenant, and until evicted, a tenant has a right of possession.  So long as L&R continued in possession, even without an actual renewal of the master lease, its possessory rights deriving from having entered into the master lease (to obtain possession in the first instance) would permit its sub-sublease to Yelverton to remain effective during such possession.

Yelverton's first argues that no action lies under § 523(a)(2)(A) because all the statements L&R alleges violate this provision are statements of financial condition, excluded from its reach.  Section 523(a)(2)(A) excepts from discharge any "extension of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  A statement of a debtor's financial condition "has been interpreted narrowly to refer to representations specifically concerning the debtor's financial worth or condition," *In re Tillman*, 197 B.R. 165, 167 n.1 (Bankr. D.D.C. 1996) (citing *Field v. Mans*, 516 U.S. 59, 74 (1995)), or more specifically, statements concerning the debtor's ability to pay.

In its complaint, L&R argues that its claim is non-dischargeable because Yelverton's representations that "YLF or [Yelverton] individually would pay the rent, medical coverage and/or services fees owed, and that YLF was capable of substantially performing under the [sub-sublease] and medical coverage agreement," and that Yelverton knew these representations to be false, or made them with reckless indifference as to their truth and with no present intention to perform.  While the statement as to YLF's ability to perform under the sub-sublease speaks to financial condition and, therefore, is properly excluded from consideration in determining

liability under § 523(a)(2)(A), Yelverton's representation that he would pay speaks to intent to repay, which is a proper consideration under § 523(a)(2)(A).

When a debtor misrepresents his intent to repay a debt that conduct falls within § 523(a)(2)(A).  *See, e.g.*, *Citibank (South Dakota), N.A. v. Eashi (In re Eashi)*, 87 F.3d 1082 (9th Cir. 1999); *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 786 (10th Cir. B.A.P. 1998) ("An implied representation of intent to repay will be fraudulent if the credit card issuer demonstrates that at the time the debtor used a credit card he or she had no intent to repay the debt incurred."); *Mercantile Bank v. Hoyle (In re Hoyle)*, 183 B.R. 635, 638 (Bankr. D. Kan. 1995)(stating that the "purchase of goods on credit by a debtor who does not intend to repay . . . constitutes a false representation" within the meaning of 11 U.S.C. § 523(a)(2)(A)) (citation omitted); *Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 507 (Bankr. N.D .Ill. 2002) (finding that a debtor who purchased a motorcycle on credit for her boyfriend and never intended to make payments on the loan misrepresented her role in the transaction to the lender, and that such misrepresentations constituted false pretenses under 11 U.S.C. § 523(a)(2)(A)).  Because L&R alleges more than misrepresentation of a financial condition—namely, misrepresentation of intent to repay—the motion to dismiss on this basis fails.

Yelverton next contends, citing to *In re Spar*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994), that no claim lies under § 523(a)(2)(A) because "false representations as to opinion, expectation or intention do not give rise to non-dischargeable debt." The debtor, however, takes this line out of context.

The line quoted above refers to a statement by the debtor to an investor about potential benefits of coming in on the ground floor of a business. *Id.* The Court, importantly, pointed out that the representations actionable under § 523(a)(2)(A) must "encompass statements that falsely purport to depict current or past facts." *Id.* (citations omitted). The court then went on to find that speculation about the future prosperity of a company was not actionable under § 523.

What Yelverton conveniently fails to note is that in the same case the court went on to find that the debtor's statement that he would execute a promissory note when he had no intention of doing so, was actionable under § 523(a)(2)(A), a situation analogous to the one alleged by the plaintiff here. If Yelverton represented an intention to repay while not intending to do so, such representation is actionable under § 523(a)(2)(A), and L&R has properly pled it in its complaint. Consequently, Yelverton's motion to dismiss on this basis also fails

Yelverton next argues that L&R's claims of fraud based on his allegedly diverting funds to his wife fail to allege fraud as

a matter of law.  Yelverton, however, misreads the complaint.  By alleging that Yelverton diverted funds, L&R was not alleging that the diversion itself was the fraud.  Rather, L&R was alleging evidence in support of its position that Yelverton never intended to pay.  L&R's argument is, in essence, if Yelverton's representation that he intended to pay the rent, supply, and medical expenses was true, why did he divert funds to his wife before defaulting further on those obligations?  L&R properly pled fraud under § 523(a)(2)(A) by alleging Yelverton had no intention to pay.  Allegations about diverting funds were merely evidence to support that allegation.

Yelverton's final basis for dismissal is that L&R failed to allege that his actions constitute "bad faith," "immorality," or "moral turpitude."  "For a debt to be nondischargeable under section 523(a)(2), the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law is insufficient."  *In re Mones*, 169 B.R. 246, 254 (Bankr. D.D.C. 1994).  In its complaint, L&R alleges that Yelverton's statements were "actuated by wantonness, gross fraud, and willful disregard of L&R . . . ."  This (or any allegation of actual fraud) is sufficient as a matter of law to meet the requirement of § 523(a)(2)(A) that the debtor's conduct involve moral turpitude or intentional wrong.

CONCLUSION

Because L&R has pled facts under which Yelverton could be liable for fraud on the lease and because L&R has stated a claim upon which relief can be granted, it is

ORDERED that Yelverton's motion to dismiss is DENIED.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.