The document below is hereby signed.

Signed: November 17, 2009.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| STEPHEN THOMAS YELVERTON, | ) | Case No. 09-00414 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| LUDWIG & ROBINSON PLLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 09-10023 |
| STEPHEN THOMAS YELVERTON, | ) | |
| | ) | **Not for Publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER RE MOTION
TO DISMISS AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

This addresses the plaintiff's Motion To Dismiss Debtor's Affirmative Defenses and Counterclaims. For the reasons set forth below, I will deny in part and grant in part the plaintiff's motion.

I

On May 14, 2009, the debtor, Stephen Thomas Yelverton, commenced a case in this court under chapter 11 of the Bankruptcy Code (11 U.S.C.).  Thereafter, the plaintiff instituted the above-captioned adversary proceeding seeking to have the court declare its claim non-dischargeable under § 523(a)(2)(A) of the Bankruptcy Code.  In his answer to the complaint, Yelverton asserted several affirmative defenses and counterclaims.

As a preliminary matter, the plaintiff styles its motion as a motion to dismiss both the affirmative defenses and the counterclaims.  While a motion to dismiss is a procedurally proper response to a counterclaim, it is not the proper response to Yelverton's affirmative defenses.  Rather, the plaintiff should have moved to strike under Fed. R. Civ. Proc. 12(f).  Because, however, the motions operate substantively the same, I elect to treat the plaintiff's motion to dismiss the affirmative defenses as a motion to strike.  I will address the motion to strike the affirmative defenses first and then address the motion to dismiss Yelverton's counterclaims.

II

Rule 12(f) of the Federal Rules of Civil Procedure permits the court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A

2

court is granted "liberal discretion" to strike such filings as it deems appropriate. *Intex Recreation Corp. v. Team Worldwide, Inc.*, 390 F. Supp. 2d 21, 24 (D.D.C. 2005); *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000).  Though generally disfavored as an extreme remedy, "a motion to strike a defense as insufficient 'should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense.'" *Intex*, 390 F. Supp. 2d at 24 (quoting *Ass'n of Am. Med. Colleges v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 22 (D.D.C. 2004)).  In his answer, Yelverton asserts four affirmative defenses.

First, Yelverton asserts that he is not liable on the lease because the lease was between the plaintiff, Ludwig and Robinson (L&R), and his law firm, Yelverton Law Firm (YLF), not him personally.  In its motion, L&R argues that the court should strike this defense because the defense does not contradict its allegations that Yelverton himself made fraudulent representations regarding his and YLF's purported ability and intent to pay.  It is damages for fraud that L&R seeks to declare non-dischargeable, with the unpaid rent being the harm arising from that fraud and for which damages are sought.

As I pointed out in my memorandum decision denying

3

Yelverton's motion to dismiss the complaint, the debtor does not have to be a party to the lease to face liability for fraud in the obtaining of the lease.  Section 523(a)(2)(A) allows the court to find non-dischargeability when the debtor indirectly benefits from a transaction colored with fraud, *see, e.g., Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir. 1996); *HSSM #7 Limited P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886 (11th Cir. 1996); *Ashley v. Church (In re Ashley)*, 903 F.2d 599, 604 (9th Cir.1990), or even when the debtor obtains no benefit as long as the claimant transferred property to someone on account of the debtor's misrepresentations, *see Muegler v. Bennings*, 413 F.3d 980, 983-84 (9th Cir. 2005); *Deodati v. M.M. Winkler & Assoc.*, 239 F.3d 746, 749 (5th Cir. 2001); *Pleasants v. Kendrick*, 219 F.3d 372, 375 (4th Cir. 2000).

Regardless of which view prevails, Yelverton has not asserted a valid defense.  Under the indirect benefit view, because Yelverton was the principal member of YLF he obtained an indirect benefit as a matter of law.  *See  Ashley v. Church (In re Ashley)*, 903 F.2d 599, 604 (9th Cir. 1990); *Simmons v. Wade (In re Wade)*, 43 B.R. 976, 981–82 (Bankr. D. Colo. 1984). Moreover, under the second view all that matters is that someone received property on account of the debtor's fraud.  That Yelverton was not a signatory to the sub-sublease is irrelevant. For these reasons, the plaintiff's motion to strike Yelverton's

first defense is granted.

Yelverton next asserts that he is not liable on the sub-sublease because the term of the sub-sublease extended beyond the term of the master lease underlying his sub-sublease.  In its motion to strike, L&R simply points to the term of the sub-sublease as extending to September 30, 2008.

As a general rule, the rights of a sub-tenant cannot extend beyond the rights of the tenant to the master lease.  *See*, *Sanchez, v. Eleven Fourteen, Inc.*, 623 A.2d 1179, 1181 (D.C. 1993) ("It is, of course, fundamental that the rights of a subtenant can, with at least one limited exception to be mentioned, rise no higher than those of his sublessor.").  As I explained in my decision denying Yelverton's motion to dismiss, however, D.C. Code § 42-3229 provides a limited exception to the general rule in that if a lease is surrendered to be renewed, any subleases of that lease remain enforceable as if they had been renewed at the time the master lease was renewed.  Importantly, the applicability of this statute turns on whether L&R in fact renewed the master lease.

Although in my decision denying Yelverton's motion to dismiss I found that dismissal was improper because the complaint led to a reasonable inference that L&R did renew, that inference did not establish conclusively that L&R did in fact renew.  Whether L&R renewed its master lease, thereby keeping the

5

sublease effective by operation of § 42-3229, or was allowed to remain in possession despite non-renewal,[1] are questions of fact left unresolved by the complaint and to which Yelverton could assert a defense to liability.  Accordingly, at this stage it is premature to strike his second defense.

Yelverton's third affirmative defense is fraudulent inducement.  In his answer, Yelverton alleges that in order to induce him to sign the lease L&R promised to refer clients to him and YLF, and but for this promise, YLF would not have entered into this lease.  In its motion, L&R claims that this defense is improper because it is barred by the lease's integration clause[2] and because it fails to plead with particularity the facts underlying the alleged fraud.

One of the requirements for any claim of fraud is that the party have reasonably relied on the fraudulent misrepresentation. *One-O-One Enters. v. Caruso*, 848 F.2d 1283, 1286 (D.C. Cir. 1988).  Both this Circuit and the District of Columbia Court of Appeals have recognized, however, that "where an agreement

---

[1] If the lease had expired and YLF was nevertheless not forced to vacate, YLF would have been obligated to pay L&R rent for the holdover period.

[2] The lease's integration clause states, in relevant part, "This Sub-sublease contains all of the covenants, agreements, terms, provisions, conditions, warranties and understandings comprising the final and entire agreement between the parties hereto, and they shall not be bound by any terms, statements, conditions or representations, oral or written, express or implied, not herein contained."

6

provides that it supersedes all previous understandings, any prior representations are superseded, such that there are no representations on which a plaintiff could reasonably base a fraud claim." *Klayman v. Judicial Watch, Inc.*, 2007 WL 1034937, *9 (D.D.C. April 3, 2007) (citing *One-O-One Enters.*, 848 F.2d at 1286-87; *see also Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 929 (D.C. 1992) (adopting the *One-O-One* test set out by the D.C. Circuit).  Although the general rule is that the parol evidence rule does not apply to fraudulently made parol representations, because the lease contains an integration clause and because any allegation of fraud requires reasonable reliance, which cannot exist because of the integration clause, Yelverton's fraud in the inducement claim cannot succeed and is appropriately stricken.[3]

Yelverton's final affirmative defense is that he suffered a constructive eviction by L&R when L&R harassed Yelverton for a

---

[3]   Even if the integration clause were not in the lease, Yelverton's fraud claim would appropriately be stricken for pleading failures.  Fed. R. Civ. Proc. 9(b) requires that allegations of fraud be pled with particularity.  To meet this requirement, the party alleging fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," and must "identify individuals allegedly involved in the fraud." *Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).  Although Yelverton identifies the content, fact misrepresented, and what was given up as a consequence of the fraud, he does not identify the time or place of the fraud, or the identity of the individuals involved in the fraud.

share of potential fees from YLF under a fee sharing agreement that Yelverton claims does not exist.  In its motion, L&R asks the court to strike this defense, arguing that such a fee sharing agreement did exist and providing a copy of that agreement with its motion.

To assert a claim for constructive eviction Yelverton would have to demonstrate "some wrongful act or omission by the landlord [that makes] the premises . . . uninhabitable ('untenantable') for the intended purpose."  *Venture Holdings Ltd. v. Carr*, 673 A.2d 686, 691 (D.C. 1996) (citations omitted). Importantly, "[a]lthough physical interference is not a necessary element of a constructive eviction claim, . . . it is essential that the tenant's quiet enjoyment be disturbed by some wrongful act or omission by the landlord."  *Id.* (citations and internal quotations omitted).  Under D.C. law, quiet enjoyment means an assurance by the landlord that the tenant's right to possession would not be invaded by the landlord or by anyone with rights superior to those of the landlord.  *Sobelsohn v. American Rental Mgt. Co.*, 926 A.2d 713, 715 (D.C. 2007).

Depending on the level of harassment by L&R, regardless of whether a fee sharing arrangement was in place, Yelverton could have suffered a constructive eviction.[4]  The level of harassment

---

[4] In order to ultimately succeed on this claim, Yelverton is going need to demonstrate an extreme level of harassment by L&R.  I have a hard time seeing how even a daily request that

Yelverton suffered, however, is by its nature fact dependent and therefore inappropriate for me to rule on at this time. Consequently, L&R's motion to strike this defense is denied.

### III

In addition to setting out several affirmative defenses, Yelverton's answer also asserts three counterclaims.  In response, L&R has filed a motion to dismiss, which I evaluate under the traditional Fed. R. Civ. Proc. 12(b)(6) standard.

The purpose of a motion to dismiss is "to test the legal sufficiency of the complaint."  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  In deciding a motion to dismiss, although the court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff . . . ," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 195 (D.D.C. 2002), the complaint must nevertheless plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint . . . . [nor must it] accept legal conclusions cast in the form of factual allegations."  *Kowal v.*

---

Yelverton fulfill his obligations under the fee sharing agreement would amount to a constructive eviction.

*MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In deciding a motion to dismiss, "the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

Yelverton's first counterclaim is for malicious interference with contractual relations and prospective contractual relations, which he alleges occurred when L&R demanded a share of fees from his clients where there was no fee sharing agreement in place. In its motion, L&R argues that dismissal is proper because Yelverton has not pled the elements or any facts supporting the allegation.

To state a claim for intentional interference with contractual relations Yelverton must allege 1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach. *Futrell v. Dept. of Labor Fed. Credit Union*, 816 A.2d 793, 807 (D.C. 2003). Even taking a liberal view of his counterclaim, Yelverton has not alerted the court or the plaintiff as to what specific contracts L&R interfered with, whether L&R knew of those contracts, and what damages he suffered. Moreover, Yelverton has not pled that any contracts were breached as a result of L&R's alleged interference. Because

Yelverton's pleading is insufficient in these regards, L&R's motion to dismiss the first counterclaim is granted without prejudice to Yelverton submitting an amended answer providing more detail on this cause of action.

Yelverton's second counterclaim is for fraudulent inducement.  For the same reasons I explained when striking his fraudulent inducement defense——because the lease had an integration clause——Yelverton cannot state a counterclaim for fraudulent inducement and L&R's motion to dismiss this claim is granted.

Finally, Yelverton asserts a complaint for replevin for the return of personal property that remained in the sub-subleased office space after Yelverton vacated.  In its motion to dismiss, L&R claims that it has not retained Yelverton's property, but has instead requested that he remove it.  Attached to its motion, L&R included an email from Robert Ludwig, Jr. to Yelverton and Wade Atkinson asking Yelverton to remove his property from the office.

Because L&R has made requests to have Yelverton remove the property and represents that it would allow him access to remove his personal effects, Yelverton's replevin claim must fail and L&R's motion to dismiss this claim is granted.

IV

It is accordingly

11

ORDERED that the affirmative defense that only YLF was liable on the lease (Ans. ¶ 3) and the affirmative defense of fraudulent inducement (Ans. ¶ 5) are STRICKEN.  It is further

ORDERED that the counterclaim for malicious interference with contractual relations and prospective contractual relations (Ans. ¶ 7), the counterclaim for fraudulent inducement (Ans. ¶ 8), and the counterclaim for replevin (Ans. ¶ 9) are DISMISSED without prejudice to renewal of the replevin counterclaim if L&R fails to permit Yelverton to retrieve his personal effects.  It is further

ORDERED that Yelverton is granted leave within 14 days of the entry of this order to file an amended answer to attempt to assert a valid claim for interference with contractual relations (present or prospective).

[Signed and dated above.]

Copies to: All counsel of record; Office of the United States Trustee.